J-S78030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAYSON MIKE EMERSON | |
| Appellant | No. 630 MDA 2014 |

Appeal from the Judgment of Sentence November 25, 2013
In the Court of Common Pleas of Dauphin County
Criminal Division at No(s): CP-22-CR-0004190-2012

BEFORE:  GANTMAN, P.J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED DECEMBER 24, 2014**

Jayson Emerson files this direct appeal from his judgment of sentence for aggravated assault against a police officer[1] and resisting arrest[2].  The lone argument raised in this appeal is: "Whether the trial court erred in denying [Emerson's] Post-Sentence Motion where the jury's verdict of guilty on both counts was against the weight of the evidence so as to shock one's sense of justice where the Commonwealth failed to prove that [Emerson] committed the crimes charged?"  Brief for Appellant, p. 4.  We affirm.

The trial court accurately recounted the evidence adduced during trial as follows:

---

[1] 18 Pa.C.S. § 2702(a)(3).
[2] 18 Pa.C.S. § 5104.

The convictions at issue stem from events which took place on the night of June 23, into June 24, 2012. (Transcript of Proceedings, Jury Trial, October 21, 2013 - October 23, 2013, p. 31) (hereinafter 'N.T.')

At approximately 3 a.m. on June 24, 2014, [Emerson] walked through the alleyway behind the Political Club located at 1550 Vemon Street in Harrisburg. (N.T. pp. 163-64) [Emerson] testified that 'four or five Hispanic males' approached, accosted him, and struck him from behind. (N.T. p. 164) [Emerson] fought with them for three or four minutes. (N.T. p. 184)

While [Emerson] engaged in the fight, Benito Malave, another club patron, with no prior association with [Emerson], exited the Political Club from its rear door and witnessed the fight. (N.T. p. 34) Malave testified that he did not want [Emerson] to suffer 'abuse.' (N.T. p. 36) Malave attempted to break up the fight by claiming the police were on their way. (N.T. p. 35) Malave then pulled one attacker away from [Emerson] and returned to [Emerson] to try to convince him to leave the scene. (N.T. p. 36) At this point, [Emerson] struck Malave, breaking his jaw and knocking a tooth loose. (N.T. pp. 38, 41, 75) Some testimony indicated [Emerson] may have struck Malave again after he fell to the ground. (N.T. p. 74) Malave suffered a serious injury that required two surgeries to repair. (N.T. p. 41, 97) After striking Malave, [Emerson] fled to a nearby house. (N.T. pp. 88, 175) Malave testified that at this time, [Emerson] was 'completely out of it,' as though intoxicated. (N.T. p. 38) Another witness to the event, Sonya Millan, Malave's niece, described [Emerson] as 'going crazy,' hitting people, and 'hitting his chest like he's the incredible hulk.' (N.T. p. 85)

After [Emerson] fled, Officer Steven Prisbe arrived on the scene in response to a disturbance call. (N.T. pp. 94-95) Prisbe took control of the situation and sent information to other officers to help apprehend

[Emerson]. (N.T. p. 97) Officer Anthony Fiore and a few other officers approached the house into which [Emerson] had fled. (N.T. p. 107) When told that [Emerson] was hiding behind the house, Fiore searched the yard with a flashlight. (N.T. p. 107) Fiore found [Emerson], who then jumped a fence and fled. (N.T. p. 108) [Emerson] ran approximately two blocks south, crossed both Thompson and Derry streets, then ran west on Drummond Street. (N.T. pp. 108-09) After turning north toward Derry Street, [Emerson] was apprehended by several officers. (N.T. p. 109)

After his apprehension, [Emerson] was noncompliant. (N.T. p. 132) Officer Fiore attempted to search [Emerson], while [Emerson] screamed in Fiore's face. (N.T. pp. 114, 138) Because [Emerson] refused to comply, the officers placed [Emerson] on his back to better control him. (N.T. pp. 115, 138-39) While in this position, [Emerson] brought his legs off the ground, striking Fiore in the face, and brought one of his legs down on top of Fiore, possibly trying to bring Fiore down. (N.T., pp. 115-16, 138) Through his own testimony, [Emerson] admitted that he struck officer Fiore. (N.T. p. 192) In response to [Emerson]'s actions, the officers used soft body blows to subdue him, completed the search, and moved [Emerson] to the transport van. (N.T. p. 116) Malave identified [Emerson] before police booked him. (N.T. p. 134)

Officer Fiore testified that during his arrest [Emerson] acted 'like a lunatic,' and that he challenged the police to fight. (N.T. p. 111) Fiore further testified that [Emerson] appeared to be under the influence of drugs or alcohol, although [Emerson] was not tested for either. (N.T. pp. 113-14, 122) Officer Henry similarly testified that [Emerson] screamed and challenged the officers to a fight, and that [Emerson] acted as though intoxicated. (N.T. pp. 130-31) Officer Donald Bender, who booked [Emerson], testified that [Emerson] was argumentative throughout the booking process, and that he appeared intoxicated. (N.T. pp. 150-51)

> [Emerson] himself testified that he was 'hysterical' and admitted he was uncooperative throughout the arrest and booking. (N.T. pp. 178, 191-93)

Trial Court Opinion, pp. 2-4. The jury found Emerson guilty of aggravated assault against a police officer and resisting arrest but acquitted Emerson of disorderly conduct and public drunkenness. The jury could not reach a decision on the charge of flight to avoid apprehension, and the trial court declared a mistrial on this charge. The trial court sentenced Emerson to 18-48 months' imprisonment on the aggravated assault charge and a concurrent sentence of 1-2 years' imprisonment on the resisting arrest charge.

Emerson filed timely post-sentence motions challenging the weight of the evidence on the aggravated assault and resisting arrest charges. The trial court denied Emerson's motions. Emerson filed a timely appeal, and both Emerson and the trial court complied with Pa.R.A.P. 1925.

As stated above, the lone issue on appeal is whether Emerson's convictions are against the weight of the evidence. When reviewing such claims, this Court's role is not to consider the underlying question of whether the verdict was against the weight of the evidence. *Commonwealth v. Kane*, 10 A.3d 327, 332-333 (Pa.Super.2010). Instead, we must decide if the trial court palpably abused its discretion when ruling on the weight claim. *Id*. In performing this task, we must remember that the initial determination regarding the weight of the evidence is for the factfinder, who is free to believe all, some or none of the evidence. *Id*. We must not

reverse a verdict based on a weight claim unless that verdict was contrary to the evidence so as to shock one's sense of justice. *Id*. Moreover, "[a]n abuse of discretion is not a mere error in judgment but, rather, involves bias, ill will, partiality, prejudice, manifest unreasonableness, or misapplication of law." *Id*.

An individual commits aggravated assault against a police officer when he attempts to cause or intentionally or knowingly causes bodily injury to a police officer. 18 Pa.C.S. § 2702(a)(3), (c)(1). Intentionally punching a police officer in the jaw and kicking her stomach constitutes aggravated assault against a police officer. *Commonwealth v. Petaccio*, 764 A.2d 582, 585-86 (Pa.Super.2000).

In this case, police officers arrested Emerson shortly after a brawl outside a bar. During the arrest, Emerson kicked Officer Fiore in the face and then slammed his leg down on top of Officer Fiore in an attempt to bring him down. Officer Fiore testified as to these facts, and Emerson himself admitted kicking Officer Fiore. N.T., pp. 191-92. Officer Henry testified that Emerson acted "like a lunatic" and challenged the police to fight. Thus, there was unrebutted evidence of Emerson's intentional and violent acts against Officer Fiore. Based on this evidence, the trial court acted within its discretion by concluding that the weight of the evidence supported the verdict of aggravated assault against a police officer.

We reach the same conclusion with regard to Emerson's conviction for resisting arrest. To prevail on this charge, the prosecution must show that

the defendant, with intent to prevent an officer from effecting a lawful arrest, creates a substantial risk of bodily injury to the officer or acts in such a manner that require substantial force to overcome. 18 Pa.C.S. § 5104. In this case, Emerson fled from police officers who were attempting to apprehend him, kicked Officer Fiore in the face, forced multiple officers to subdue him with soft body blows, screamed at officers throughout the arrest, and challenged them to a fight. Based on this evidence, the trial court acted within its discretion by concluding that the weight of the evidence supported the verdict of resisting arrest.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/24/2014